E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office
COURTNEY N. WILLIAMS (Cal. Bar No. 339301)
Assistant United States Attorney
Riverside Branch Office
     3403 Tenth Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 368-1473
     Facsimile: (951) 276-6202
     Email:     Courtney.N.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ANWER FAREED ALAM,<br><br>　　　　　Defendant. | ED CR No. 24-16-WLH<br><br>THE UNITED STATES SENTENCING POSITION CONCERNING DEFENDANT ANWER FAREED ALAM; EXHIBIT 1<br><br>Hearing Date: November 1, 2024<br>Hearing Time: 9:00 a.m.<br>Location:　　Courtroom of the<br>　　　　　　　Hon. Wesley L. Hsu |

　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Courtney N. Williams, hereby files its Sentencing Position Concerning Anwer Fareed Alam.

　　　This Sentencing Position is based upon the attached memorandum of points and authorities and Exhibit 1; the files and records in this case including the United States Probation and Pretrial Services Office's Presentence Investigation Report and Recommendation Letter; and such further evidence and argument as the Court may permit.

The United States respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: October 18, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office

         /s/
COURTNEY N. WILLIAMS
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

**Contents**

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.    INTRODUCTION.....................................................1

II.   FACTUAL BACKGROUND...............................................2

III.  THE PRESENTENCE INVESTIGATION REPORT.............................4

      A.    OFFENSE LEVEL..............................................4

      B.    CRIMINAL HISTORY CATEGORY..................................4

      C.    PROBATION'S RECOMMENDED SENTENCE...........................4

IV.   THE UNITED STATES' RECOMMENDED SENTENCE AND 3553(A)
      ANALYSIS.........................................................5

      A.    NATURE, CIRCUMSTANCES, AND SERIOUSNESS OF THE OFFENSE......5

      B.    DEFENDANT'S HISTORY AND CHARACTERISTICS....................6

      C.    NEED TO PROTECT THE PUBLIC, TO PROVIDE ADEQUATE
            DETERRENCE AND JUST PUNISHMENT, AND TO PROMOTE RESPECT
            FOR THE LAW................................................8

V.    THREE YEARS OF SUPERVISED RELEASE SHOULD BE IMPOSED..............8

VI.   RESTITUTION......................................................9

VII.  RESPONSE TO DEFENDANT'S SENTENCING POSITION......................9

VIII.      CONCLUSION.................................................12

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                      <u>PAGE</u>

<u>CASES</u>

<u>United States v. Buenrostro</u>,
   868 F.2d 135 (5th Cir. 1989) ..................................... 12

<u>United States v. Davis</u>,
   36 F.3d 1424 (9th Cir. 1994) ..................................... 11

<u>United States v. Diaz</u>,
   884 F.3d 911 (9th Cir. 2018) ..................................... 11

<u>United States v. Dominguez-Caicedo</u>,
   40 F.4th 938 (9th Cir. 2022) ..................................... 11

<u>United States v. Rosas</u>,
   615 F.3d 1058 (9th Cir. 2010) .................................... 10

**FEDERAL STATUTES**

18 U.S.C. § 1341 ..................................................... 1

18 U.S.C. § 3553 ..................................................... 5

**UNITED STATES SENTENCING GUIDELINES**

U.S.S.G. § 2B1.1 ..................................................... 4

U.S.S.G. § 3B1.2 ................................................. 10,11

U.S.S.G. § 3E1.1 ..................................................... 4

U.S.S.G. § 4C1.1 ..................................................... 4

U.S.S.G. § 5D1.1 ..................................................... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

For almost three years, Anwer Fareed Alam ("defendant") and his co-schemer brother, filed over 13 thousand falsified insurance claims and profited over two million dollars at the expense of the United States Postal Service. They then used their ill-gotten gains to fund their lavish lifestyle purchasing high-end watches, expensive jewelry, and luxury duffle bags. Defendant has pleaded guilty to a violation of 18 U.S.C. § 1341.

On September 27, 2024, the United States Probation and Pretrial Services Office ("Probation") filed its Recommendation Letter ("RL," Dkt. 23) and Presentence Investigation Report ("PSR," Dkt. 24). The PSR calculated a total offense level of 18 and a Criminal History Category of I, resulting in a Guidelines range of 27 to 33 months' imprisonment. (PSR ¶¶ 42-61, 65-66, 119.)

To appropriately address the substantial harm that defendant has caused the government and the community, the United States respectfully requests that the Court impose a sentence of: (1) 27 months' imprisonment, (2) a three-year period of supervised release, (3) $2,135,739.46 in restitution to the United States Postal Service, and (4) a $100[1] in mandatory special assessment.

---

[1] The United States would recommend that the Court wait to determine whether defendant has the ability to pay a fine after he fully complies with all financial disclosure obligations. According to Probation, he has only partially completed his Personal Financial Statement and has partially provided supporting documentation including his personal and business bank statements. (PSR ¶¶ 106-107.) Also, Probation has not received all information regarding the defendant's financial status including his monthly expenses. Lastly, defendant did not provide Probation with a signed Authorization to Release Confidential Information. (Id.) Because the defendant has failed to fully provide all his financial information, the United
*(footnote cont'd on next page)*

This sentence is sufficient and no greater than necessary to accomplish the goals of sentencing and fairly balances defendant's history and characteristics, and the nature, circumstances, and seriousness of the offense, among other things.

## II. FACTUAL BACKGROUND

At his February 16, 2024 change of plea hearing, defendant admitted to the following facts consistent with the factual basis of the Plea Agreement. (Dkt. 6, "Plea Agreement," ¶ 10; see also PSR ¶¶ 13-27.)

Between October 2016 and May 2019, defendant and his brother co-schemer Yousofzay Fahim Alam ("Yousofzay Alam") participated in a scheme to defraud the United States Postal Service ("USPS") out of approximately $2,367,033. Defendant and co-schemer Yousofzay Alam purchased Priority Mail packages and postages from USPS that included $100 in insurance for the lost or damaged contents of a parcel. Defendant wrapped empty packages or packages containing items of little to no value, and then he sent those packages via Priority Mail to fictitious recipients at fictitious addresses. Defendant used aliases and fictitious business names as the sender for the packages he sent via Priority Mail as part of the scheme. Defendant mailed these packages knowing that he and co-schemer Yousofzay Alam intended to file false insurance claims with USPS and claim that the packages were either lost or damaged. After defendant sent the packages, coschemer Yousofzay Alam submitted fraudulent insurance claims to USPS via USPS.COM, falsely certifying that the packages contained

---

States recommends the Court require defendant to comply with these disclosures before making a determination about his ability to pay a fine.

2

items of higher value than the packages contained and falsely representing that the packages were lost and/or damaged in transit, when, in fact, defendant and co-schemer Yousofzay Alam knew that defendant had not actually shipped the items that co-schemer Yousofzay Alam claimed had been lost or damaged, and that the claimed value of the item lost or damaged far exceeded the actual value of what defendant sent.  To accompany the fraudulent insurance application, co-schemer Yousofzay Alam also included fictitious invoices that he created as well as pictures of goods that were not actually in the Priority Mail parcels.  As part of the application, co-schemer Yousofzay Alam certified the validity of the insurance claim although he knew the claims were false. Relying upon these false representations as to the lost or damaged contents of the Priority Mail packages, USPS issued insurance claim checks to defendant or co-schemer Yousofzay Alam to cover the purported losses up to $100 in value plus the cost of the shipping. USPS sent these claim checks to defendant and co-schemer Yousofzay Alam at various addresses in Temecula, California to include their residential addresses, their business address, and approximately 15 different P.O. Boxes at two different post offices.  Defendant and co-schemer Yousofzay Alam deposited, or caused to be deposited, USPS insurance checks into bank accounts controlled by defendant and/or co-schemer Yousofzay Alam.

    For the purpose of executing the scheme, on November 1, 2018, in Riverside County, within the Central District of California defendant and co-schemer Yousofzay Alam willfully caused an item to be placed in an authorized depository for mail matter to be sent and delivered by USPS.  More specifically, USPS issued, and then mailed, a $106.59

Priority Mail claim check #03112709359 in response to defendant's and co-schemer Yousofzay Alam's false and fraudulent insurance claim #5728231 that was submitted on October 30, 2018.  Claim check #03112709359 was mailed to 42309 Winchester Road, Suite 1, Temecula, California.  Defendant collected the check and then deposited it in his and co-schemer Yousofzay Alam's Wells Fargo account ending in 1752 on or about November 27, 2018.

**III. THE PRESENTENCE INVESTIGATION REPORT**

On September 27, 2024 Probation issued its Recommendation Letter and disclosed the PSR to the Parties.  (Dkts. 23, 24.)

    **A.**    **OFFENSE LEVEL**

In the PSR, Probation concluded that the appropriate offense level is 7.  Probation's offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1 |
| Creating Risk of Death/Injury: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| Acceptance of Responsibility: | -3 | U.S.S.G. §§ 3E1.1(a), (b) |
| Zero Point Offender | -2 | U.S.S.G. § 4C1.1 |
| Total: | 18 | |

(PSR ¶¶ 42-61.)

    **B.**    **CRIMINAL HISTORY CATEGORY**

The PSR concluded that defendant is in Criminal History Category I because of a criminal history score of zero.  (PSR ¶¶ 64-68.)

    **C.**    **PROBATION'S RECOMMENDED SENTENCE**

The Guidelines range for a total offense level of 18 with a Criminal History Category I is 27 to 33 months' imprisonment.  (PSR ¶ 119.)  In its Recommendation Letter, Probation recommended the following sentence: (1) a low-end term of imprisonment of 27 months, (2) a three-year period of supervised release, (3) a mandatory $100

special assessment, and (4) $2,367,033 in restitution to the United States Postal Service.  (RL at 1-4.)

## IV. THE UNITED STATES' RECOMMENDED SENTENCE AND 3553(A) ANALYSIS

The United States recommends the following sentence: (1) 27 months' imprisonment, (2) a three-year period of supervised release, (3) $2,135,739.46[2] in restitution to the United States Postal Service, and a (4) $100 in mandatory special assessments.

The United States believes this sentence appropriately balances defendant's history and characteristics, the nature, circumstances, and seriousness of the offense, and the need to promote respect for the law, among other things.

### A. NATURE, CIRCUMSTANCES, AND SERIOUSNESS OF THE OFFENSE

The defendant's conduct was serious.  While it was not a sophisticated scheme, it was deliberate and flagrant.  Defendant had an essential, integral role in the scheme.  He, and his brother, purchased Priority Mail packages and postage from USPS that included $100 in insurance for the lost or damaged contents of a parcel. Defendant then wrapped empty packages or packages containing items of little to no value, and then sent those packages via Priority Mail to fictitious recipients at fictitious addresses.  Defendant sent these packages knowing that his brother would file a false claim. Defendant, and his brother, also opened various post office boxes to receive the postal checks issued pursuant to the insurance.  And once they received the money, both defendant and his brother went to the bank to cash the checks.  The money was often deposited into accounts

---

[2] As discussed below, the government has recalculated the outstanding loss and it is less than previously believed.  As such, it is requesting this lower amount.

5

where both men had access to the money. This was not aberrant behavior that occurred once or twice, but was consistent and widespread fraudulent conduct. In fact, the defendant and his brother completed these acts approximately 13,640 times over the span of three years.

Once they received the money, it appears that they spent the money on lavish luxury items. For example, in 2019, when law enforcement executed a search warrant at the defendant's home, they found approximately $60,000 dollars in cash, and large quantity of luxury consumer goods that include Patek Philippe watches, Chanel handbags, Cartier gold chains, Apple MacBook Pro laptops, Louis Vuitton bags and shoes, and other luxury items that retail for thousands of dollars. (See Plea Agreement, Appendix A; PSR ¶ 30.)

Probation also noted some of defendant's luxury items in the PSR after visiting his home. For example, she noted that a pair of Gucci shoes were located next to the front door and multiple boxes of jewelry in a safe in defendant's bedroom. (PSR ¶ 87.)

While having nice things is not a crime, defrauding the government out of millions of dollars and using that money to buy high-end luxury items most certainly is one. And the defendant's sentence should reflect this illegal conduct. A sentence of 27-months imprisonment is appropriate here and reflects the seriousness of defendant's actions.

**B.   DEFENDANT'S HISTORY AND CHARACTERISTICS**

Defendant is a college educated, multilingual, entrepreneur who has been afforded every opportunity in life. (PSR ¶¶ 71-88.) He was raised in a "traditional Afghan family" where his mother and father have been married for over 50 years and live near him in Temecula,

California.  (PSR ¶¶ 71, 74.)  He told Probation that his parents have a "healthy marriage" and "sacrificed everything" for their family.  (PSR ¶ 72.)

Despite coming from a loving and supportive family where all his basic needs were met (PSR ¶ 76) and having the skills and resources to maintain a legitimate and honest career (PSR ¶¶ 97-100), he and his brother chose a life of crime.  They chose to intentionally defraud the United States year after year and would likely still be defrauding the government had it not been for the efforts of the law enforcement. (See PSR ¶ 31 (noting that $7,439 in cash, computers with the "fraud template", USPS labels and packaging materials, USPS post office box keys, 155 pieces of mail containing USPS claims checks, 100 empty USPS claims check envelops were all found in the defendant's Winchester Road business location).)

And while the length of the crime (approximately three years) and the amount of money stolen from the government (approximately two million) are aggravating circumstances warranting custodial time, there are mitigating factors that warrant a low-end sentence.  First, the defendant has no other criminal convictions and has maintained consistent employment throughout his life.  (PSR ¶ 65.)  Second, he has a supportive wife and "close, kind, loving" relationship with his siblings (PSR ¶ 74) and a positive relationship with his parents (PSR ¶ 72).  These familial connections will be beneficial for the defendant upon release.  Third, defendant also pleaded guilty early and thus saved the United States valuable resources and time.

**C.   NEED TO PROTECT THE PUBLIC, TO PROVIDE ADEQUATE DETERRENCE AND JUST PUNISHMENT, AND TO PROMOTE RESPECT FOR THE LAW**

The United States' recommended sentence of 27 months' imprisonment promotes respect for the law, protects the community, and deters defendant and others who would seek to emulate defendant's conduct.  Defendant and other would-be white-collar criminals must be shown that serious financial misconduct results in more than the proverbial "slap on the wrist."  This is even more essential when the scheme runs for years and amasses millions of dollars in economic loss.  While the defendant and his brother defrauded the United States Postal Service and not an individual, the consequences of financial crimes are far-reaching and undermines the community's faith in our governmental institutions.  Thus, a low-end Guideline sentence is thus appropriate to deter defendant, and others, from engaging in similar conduct in the future.

**V.   THREE YEARS OF SUPERVISED RELEASE SHOULD BE IMPOSED**

Because of the seriousness of defendant's criminal conduct, a three-year period of supervised release is appropriate.  Moreover, and importantly, such a period provides time under supervision where Probation can assure that defendant complies with his financial obligations to pay the $2,135,739.46 and special assessment. U.S.S.G. § 5D1.1, comment. (n.3(A)) ("In determining whether to impose a term of supervised release, the court is required by statute to consider, among other factors: ... (iv) the need to provide restitution to any victims of the offense.").

8

**VI. RESTITUTION**

The Court should order $2,135,739.46 in restitution to the United States Postal Service. In the Plea Agreement, defendant agreed to pay restitution. (Plea ¶ 2.)

Defendant (Def. Pos. at 4) and Probation (PSR ¶ 33) agree that restitution should be $2,367,033. However, the United States Postal Service has since provided an updated chart with the final restitution amount. Restitution should be paid in the amount of $2,135,739.46. (Exhibit 1.) Accordingly, the Court should order restitution in the amount $2,135,739.46.

**VII. RESPONSE TO DEFENDANT'S SENTENCING POSITION**

In his sentencing position, defendant requests a split sentence, 9-months custodial time and 9-months of supervision and house arrest. More specifically, he requests a minimal role reduction and a reduction for expeditious resolution.

To support his request for a split sentence, defendant misrepresents his post-discovery interaction with the United States, incorrectly alleges the Guidelines do not properly evaluate his conduct and crime and attempts to minimize the extent of his involvement in the criminal scheme. The Court should reject his request for a below Guidelines sentence and his request for additional reductions.

First, the defendant claims that he worked with the government. (Def. Sent. Pos. at 1.) This is patently untrue. The defendant has never provided cooperation for the government or worked on behalf of the government.[3]

---

[3] See Plea Agreement (Dkt 6) (containing no provisions regarding cooperation).

Second, defendant seemingly tries to argue that the guidelines "fail to consider the facts surrounding the offense or the characteristics" of the defendant and suggests that the Guidelines are too high. (Def. Sent. Pos. at 7-9.)  Again, this is not true. Not only do the Guidelines appropriately account for the seriousness of the financial crime by including a sixteen-level enhancement for loss amount, but also, the Guidelines take into consideration defendant's background and criminal history by including a two-level reduction for him being a zero-point offender, and a three-level reduction for defendant's timely acceptance of responsibility. Defendant fails to provide any case law or any facts that demonstrate "exceptional circumstances" requiring a sentence below the low-end Guideline range.  (Def. Sent. Pos. at 10.)

Third, defendant claims that he had a minor role in the offense and requests a minor role reduction.  This is also not true.  Section 3B1.2 of the Guidelines provides that the offense level should be decreased as follows: "(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels; (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.  In cases falling between (a) and (b), decrease by 3 levels." U.S.S.G. § 3B1.2.  A defendant bears the burden of proving that he is a minor participant by a preponderance of the evidence.  United States v. Rosas, 615 F.3d 1058, 1067 (9th Cir. 2010).  Whether a defendant is entitled to a role reduction is a question of fact based on the "totality of the circumstances;" it is "heavily dependent upon the facts of a particular case."  U.S.S.G. § 3B1.2 cmt. n.3(C).  A district court should only grant a minor-role reduction in

10

"exceptional circumstances." United States v. Davis, 36 F.3d 1424, 1436 (9th Cir. 1994).

To receive a role reduction, a defendant must be "substantially less culpable than the average participant" in the charged criminal activity. U.S.S.G. § 3B1.2, cmt. n.3(A) (emphasis added); see United States v. Diaz, 884 F.3d 911, 914 (9th Cir. 2018). To determine whether a defendant is substantially less culpable than the average participant, a district court must (1) "identify all of the individuals for whom there is sufficient evidence of their existence and participation in the overall scheme;" (2) "calculate a rough average level of culpability for these individuals, taking into consideration the five factors in comment 3(C) to the Mitigating Role Guideline," noted below; and (3) "compare the defendant's culpability to that average." United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022) (quotation marks omitted).

As noted, defendant has the burden to prove that he qualifies for a downward adjustment based on mitigating role. He has not provided any evidence (e.g., reports, call logs, text messages, declarations, etc.) to establish that he is "less culpable than most other participants in the criminal activity," or that he was "substantially less culpable than the average participant in the criminal activity." See United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022). For instance, he has failed to prove that his brother "was the mastermind behind the scheme" (def. sent. at 10) and that there was a "disparity between the two brothers and their actions." (Id.) Instead, he relies on bald, self-serving, conclusory statements that he played a minor role in the offense and should be afforded a two-level reduction. See United States v. Buenrostro, 868

11

F.2d 135, 138 (5th Cir. 1989) ("The district judge need not accept the defendant's self-serving account of his role in the drug organization."), cert. denied, 495 U.S. 923 (1990).

These self-serving statements are contrary to the facts and the evidence in this case. In fact, as noted above, he played an integral part of the scheme. He purchased Priority Mailboxes, he used fictious aliases and address to mail those boxes, he opened various post office boxes to receive the postal checks and cashed some of the fraudulent checks. His role was not minimal at all, it was essential. Defendant neither demonstrated that his brother was substantially more culpable, nor that his criminal conduct was "minor" to the furtherance of the criminal enterprise. Simply put, defendant played an important role, and his sentence should reflect his role. A sentence of 27-months is appropriate.

**VIII.    CONCLUSION**

The United States respectfully recommends that the Court impose a law-end Guideline sentence of (1) 27 months' imprisonment, (2) a three-year period of supervised release, (3) $2,135,739.46 in restitution to the United States Postal Service, and a (4) $100 in mandatory special assessment.